**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONVERGEONE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-cv-00992-MTS |
| | ) | |
| STEPHEN WILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff ConvergeOne, Inc.'s ("C1") Motions for Preliminary Injunctions, Docs. [47] and [51]. C1 filed this suit against two former employees, Michael Schnettgoeke and Stephen Wiley, and now C1 seeks an injunction binding them and their new employer, Logicalis, Inc. ("Logicalis"), to the terms of the noncompete and nondisclosure agreements Schnettgoeke and Wiley signed when they worked for C1, as well as a prohibition on use of C1's proprietary information and trade secrets and an award of reasonable attorney's fees. Doc. [47] ¶¶ 1–4; Doc. [51] ¶¶ 1–4. However, because C1 does not show that it is likely to suffer irreparable harm from Defendants' actions, this Court will deny C1's Motion.

## I. Background

C1 and Logicalis are both global IT services providers. Doc. [79] ¶ 1; Doc. [80] ¶ 10. C1 hired Defendant Stephen Wiley as a National Account Manager in 2011 and hired Defendant Michael Schnettgoecke to the same position upon acquiring Schnettgoecke's previous employer AOS LLC in 2017. Doc. [79] ¶¶ 30, 33; Doc. [80] ¶¶ 13, 33. As a condition of employment, both Wiley and Schnettgoecke signed noncompetition and nonsolicitation

agreements with C1. Doc. [37-1] ¶¶ 5(a)–(b); Doc. [37-2] ¶¶ 6–7. These agreements prevented Wiley and Schnettgoecke from soliciting any C1 client after leaving C1, and Schnettgoecke's agreement prevented him from working for any C1 competitor within a 50-mile radius for one year after his departure from C1. *Id.* C1 claims that both Wiley and Schnettgoecke had access to trade secrets and proprietary information during their employment, including (1) a customer management relationship system ("CRM") containing information about customers, and (2) Excel spreadsheets with similar information. Doc. [37] ¶¶ 31, 37; Doc. [101] at 11; Doc. [101-1] at 14:13–21, 116:1–3,121:2–122:11.

In 2024, C1 declared Chapter 11 bankruptcy, and around the same time, a substantial number of C1 employees left for Logicalis. Doc. [101-1] at 81:17-25; Doc. [83-4] at 174:1-8. Schnettgoecke and Wiley followed that trend in February and May of 2025, respectively. Doc. [101-1] at 42:18–22, 115:15–16. Since that time, C1 claims that Schnettgoecke and Wiley have violated their nonsolicitation agreements by soliciting several C1 clients, including MiTek, Spartan Light Metal Products, Singing River Hospital System, and Southern Illinois Hospital. Doc. [79] ¶¶ 69–81. C1 also claims that loss of these clients has substantially damaged C1's goodwill and reputation in the community. Doc. [83-4] at 176:1–177:14.

C1 brought this action on July 3, 2025, asserting claims for breach of contract against Wiley, tortious interference with contract against Logicalis, and unfair competition and unjust enrichment against both. Doc. [1] ¶¶ 46–74. On November 7, 2025, C1 amended its pleading to assert breach of contract, unfair competition, and unjust enrichment claims against Schnettgoecke. Doc. [37] ¶¶ 100–131. On March 17, 2026, C1 amended its pleading again to assert a claim for violation of the duty of loyalty against Wiley. Doc. [79] ¶¶ 137–152.

C1 now petitions this Court for a preliminary injunction enforcing the terms of Wiley and Schnettgoecke's agreements. Doc. [47] ¶ 1; Doc. [51] ¶¶ 1–2. However, because C1 fails to demonstrate any irreparable harm, this Court declines to enter a preliminary injunction.

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The party seeking a preliminary injunction "bears the burden of establishing the necessity of the remedy." *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023). Courts within the United States Court of Appeals for the Eighth Circuit weigh four factors to determine if preliminary injunctive relief is appropriate: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

This test is a factor test, but as the Eighth Circuit recently restated in *Choreo, LLC v. Lors*, the irreparable harm prong is a requirement. 164 F.4th 667, 671 (8th Cir. 2026). In the Eighth Circuit's words, "failure to show irreparable harm is, by itself, a sufficient basis to deny a preliminary injunction." *Id.* (citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)); *see also Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) ("Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm."). Therefore, the Court begins its analysis here by determining whether C1 has shown irreparable harm. It has not.

The question of whether irreparable harm exists is a question of federal law. *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 462 (8th Cir. 2025). The irreparable harm prong requires that the movant "show that the harm is certain[,] great[,] and of such imminence that there is a clear and present need for equitable relief." *Choreo*, 164 F.4th at 671 (quoting *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022)); *accord Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024). If the movant can be made whole through monetary damages, then the harm is typically not irreparable. *See Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

**III. Discussion**

Here, Defendants Wiley and Schnettgoecke both signed agreements with C1 in which they agreed that damages to C1 from a violation would be irreparable. Doc. [37-1] ¶ 7; Doc. [37-2] ¶ 15. But that type of contractual language does not establish irreparable harm on its own, *see StreamTech Eng'g, LLC v. Horcher*, 4:22-cv-0550-AGF, 2022 WL 1718895 at *5 (E.D. Mo. May 27, 2022) (compiling cases), because a "party cannot contract federal courts into providing injunctive relief," *Revenue Mgmt. Sols., LLC v. Com. Bank*, 183 F.4th 618, 626 (8th Cir. 2026) (citing *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986)). Plaintiff must show irreparable injury some other way.

Besides the stipulation, C1's Post-Preliminary Injunction Hearing Brief cites three sources of irreparable harm it says warrants relief: Wiley and Schnettgoecke's access to C1's trade secrets and proprietary information, Wiley and Schnettgoecke's supposed solicitation of C1 clients, and Wiley and Schnettgoecke's theft of C1's customer goodwill. *See* Doc [104] at 12. This Court analyzes each in turn.

**a. Trade Secrets and Proprietary Information**

The Eighth Circuit has found potential disclosure of trade secrets and proprietary information to be an irreparable injury. *Cigna*, 103 F.4th at 1346. The trade secret need not even be disclosed; the mere fact that it exists and is in the hands of an employee for a competitor is sufficient because "once a trade secret is disclosed, its secrecy is lost forever." *Id.* (quoting *APAC Teleservs., Inc. v. McRae*, 985 F. Supp. 852, 866 (N.D. Iowa 1997) (Melloy, C.J.)).

Here, though, C1's Post-Hearing Brief merely states that Wiley and Schnettgoecke had access to "trade secrets and confidential, proprietary information," without providing any detail on what those secrets are. Doc [104] at 12. This Court must engage in guesswork to determine what secrets C1 has in mind. Defendants claim, and this Court agrees, that C1 is referring to "(1) C1's CRM to which Wiley and Schnettgoecke both had access . . . and (2) [E]xcel sheets Schnettgoecke's boss at C1 sent his sales team to update client accounts." Doc [101] at 11. The problem with both pieces of evidence, though, is that it is unclear how their use would cause *incalculable* harm. As Defendants argue, both the CRM and the Excel sheets are, in effect, customer lists. Doc [101] at 11. The value of a customer list derives from a competitor poaching the customers, and a court can calculate damages for the clients, if any, someone poached. "[L]ost business is reparable through monetary damages," and "[t]o the extent there are more nebulous competitive advantages," C1 "has failed to identify what those advantages are and why they cannot be calculated through a monetary damages award." *Equity One Franchisors, LLC v. Dishon*, 4:26-cv-0115-MAL 2026 WL 439263 at *2 (E.D. Mo. Feb. 17, 2026). Therefore, C1 has not shown that they will suffer irreparable harm on this ground.

**b. Loss of Goodwill**

Under Eighth Circuit precedent, loss of customer goodwill can also constitute an irreparable injury. *Choreo*, 164 F.4th at 671 (citing *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996)). However, the loss of goodwill must be concrete; mere allegations of "amorphous loss of goodwill and reputation" are not sufficient. *Id.* For example, in *Choreo*, the plaintiff introduced declarations from two employees stating that the defendant's theft of clients "has destabilized [the plaintiff's] business by undermining the notion that these client relationships belong to [plaintiff]." *Id.* at 672. The Eighth Circuit found this evidence insufficient because (1) the declarations were "conclusory" and (2) the damages from loss of clients were calculable. *Id.*; *contra Choreo, LLC v. Lors*, 777 F. Supp. 3d 947, 967 (S.D. Iowa 2025) ("Without prompt judicial intervention, Choreo will lose this fleeting opportunity to stabilize these relationships, resulting in harm that defies accurate calculation and adequate monetary compensation.").

The facts of this case strongly resemble *Choreo*. C1 cites a single piece of evidence to establish its loss of goodwill, the deposition testimony of Kyle Wewe, a former employee of C1. Doc [104] at 12. On pages 175 to 177 of his deposition, Wewe testifies extensively to C1's loss of *partner* goodwill, but not to its loss of customer goodwill. Doc [99-2] 175:25–177:14. Only one statement from Wewe that the Court has seen[*] can generally be interpreted as a statement about loss of customer goodwill:

> So customers talk, I mean, that's kind of how it happens, and it creates this uncertainty about us in the market when our people are targeted to go over to Logicalis. It creates lack of goodwill. People tend to talk and innuendos and things start to fill the gap.

[*] C1 did not provide a page and line number from Kyle Wewe's deposition in support of its claim; so, this Court was left to wonder which part of Kyle Wewe's 187-page deposition C1 is referencing.

*Id.* 177:5–11. That testimony is the conclusory type that the Eighth Circuit rejected in *Choreo* and elsewhere. *See, e.g.*, *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (finding the plaintiff's reputational harms too speculative because it merely claimed, without corroboration, "that these harms are inevitable"). And while Wewe may cite general, incidental benefits to customer relationships, those incidental benefits alone are not sufficient to warrant injunctive relief. *Choreo*, 164 F.4th at 672. As the Eighth Circuit noted in *Choreo*, calculations of economic damages "might not account for incidental benefits of client relationships," but "the financial harm from lost client revenues will not be so uncertain that it renders the damages incalculable . . . ." *Id.* at 671 (citing *Wash. Tr. Advisors, Inc. v. Arnold*, 646 F. Supp. 3d 210, 221 (D. Mass. 2022)).

**c. Solicitation of C1 clients.**

Finally, Plaintiffs claim that Wiley and Schnettgoecke have affirmatively solicited various clients of C1, including MiTek, Spartan Light Metal Products, Singing River Hospital System, and Southern Illinois Hospital. Doc. [79] ¶¶ 69–81. However, these kinds of injuries do not warrant injunctive relief on their own unless they are in some way incalculable. *See Revenue Mgmt. Sols.*, 183 F.4th at 624 ("The harm also must be non-compensable with money damages or incalculable."); *Choreo*, 164 F.4th at 670, 672; *Equity One*, 2026 WL 439263 at *1 ("Even if [Defendant] has blatantly violated his contractual obligations, [Plaintiff] has not demonstrated that the resulting harm from those violations is not reparable with money damages."). Plaintiff presents no arguments to suggest that mere solicitation of clients causes incalculable harm, and Eighth Circuit precedent establishes the contrary. *See MPAY*, 970 F.3d

at 1020 (rejecting the notion financial harm resulting from the loss of customers is always incalculable). Therefore, Plaintiff is not entitled to injunctive relief on this ground either.

## IV. Conclusion

Preliminary injunctions are strong medicine. This Court will not award them unless C1 cannot be compensated with money, and here money is adequate to make C1 whole.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motions for Preliminary Injunctions, Docs. [47] and [51], are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order, Doc. [63], is **DENIED** as moot.

Dated this 18th day of September 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE